U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAR 2 8 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

DANIEL C. JENKINS                    CIVIL ACTION
        Appellant                    NO. 05-2112

VERSUS

JO ANNE B. BARNHART                  JUDGE DEE D. DRELL
COMMISSIONER OF SOCIAL SECURITY      MAGISTRATE JUDGE JAMES D. KIRK
        Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Daniel C. Jenkins ("Jenkins") filed an application for Disability Insurance Benefits and/or Supplemental Security Income benefits ("SSI")on July 31, 2000 alleging an inability to work due to an injury sustained to his left leg and knee. (R. 153-155). The claim was initially denied January 10, 2002 (R. 51) and Jenkins timely filed a request for a hearing before a Federal Administrative Law Judge ("ALJ"). (R. 56-59).

ALJ Lyndell Pickett held a hearing on May 6, 2002, and Jenkins, his attorney, Michael Hebert, and Vocational Expert ("VE")Thomas Lafosse attended. After ALJ Pickett rendered his decision on June 24, 2002 denying benefits, (R. 27-36), Jenkins filed a request for review of the decision with the Appeals Council ("the Council"). (R. 105-107). The Council reversed and remanded the matter on December 27, 2002. (R. 108-111). Accordingly, a second hearing was held before ALJ Pickett on September 25, 2003.

Present at the second hearing were Jenkins, Mr. Hebert and VE Harris Rowzie. (R. 297). On January 30, 2004, ALJ Pickett issued his decision denying benefits, (R. 37-43), and, again, Jenkins sought review by the Council. (R. 136-138). On July 12, 2004, the Council reversed ALJ Pickett's decision and remanded the matter for a second time. (R. 48-50).

The third hearing in the matter was held before ALJ Ronald Burton on May 17, 2005. Both Jenkins and his attorney were present as well as VE Lafosse. (R. 259). On June 22, 2005, ALJ Burton issued his decision denying benefits. (R. 10-20). Jenkins filed a request for review of that decision; the Council declined review on October 8, 2005; and, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). (R. 3-6).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work

-2-

previously performed or in any other substantial gainful employment
that exists in the national economy.  42 U.S.C. 423(d)(2).

To qualify for SSI benefits, a claimant must file an
application and be an "eligible individual" as defined in the Act.
42 U.S.C. 1381(a).  Eligibility is dependent upon disability,
income and other financial resources.  42 U.S.C. 1382(a).  To
establish disability, a claimant must demonstrate a medically
determinable physical or mental impairment that can be expected to
last for a continuous period of not less than twelve (12) months.
Claimant must also show that the impairment precludes performance
of the work previously done, or any other kind of substantial
gainful employment that exists in the national economy.  42 U.S.C.
1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the May 17, 2005 hearing, Jenkins was 49 years
old.  Jenkins graduated from highschool in 1979 and completed two
years of college. (R. 331).  He began working for CLECO Utility
Company in 1979 and during his tenure, he held positions as a
lineman, a service mechanic and a customer service specialist. (R.
331).  Jenkins explained that all three positions were labor
intensive as he was required to build utility lines and work in the
elements. (R. 331-332).  The position of service mechanic was
essentially the same as a lineman, but you did not work with a
group of men, and a customer service representative had the same

-3-

requirements as lineman and service mechanic except there was no need to climb a worker basket. (R. 332).

In 1993, Jenkins was involved in a work related accident during which he broke his left femur. (R. 333-334). As a result of the break, Jenkins experienced problems with his left leg and knee including, but not limited to, arthritis and decreased mobility. (R. 261). Jenkins testified he had to watch where he walked, refrain from doing anything of a weight bearing nature, climb or sit with his knee bent for a long period of time. (R. 264-265).

Jenkins returned to CLECO in 1994 and worked until 1997 when it became too difficult to perform the job requirements associated with his position. (R. 336-337). In December of 1999, CLECO offered Jenkins the opportunity to train for a desk position working on computers. (R. 299). Jenkins accepted the offer and trained until February of 2000. (R. 299). However, he advised he could not accept the offer of employment because sitting eight hours a day was against the recommendation of his doctor. (R. 291).

Jenkins testified that when he sat with his leg bent, he required breaks to alleviate pain. In addition to standing up and moving around, Jenkins took aspirin, propped his leg up and/or placed ice on his leg. He did not state with certainty how often he required breaks or how long of a break he would need. Instead, he indicated that he might need a break anywhere from fifteen to forty-five minutes after taking a seat and the break might last

-4-

five to forty-five minutes before he experienced relief.  (R. 265-267, 304-305, 338, 342-343).

ALJ Burton found Jenkins met the non-disability requirements for a period of disability and Disability Insurance Benefits as set forth in Section 216(i) of the Social Security Act and was insured for benefits through June 22, 2005. (R. 19).  Jenkins had not engaged in substantial gainful activity since the alleged onset of his disability; was unable to perform any of his past relevant work; and, was a "younger individual" with "more than a high school (or high school equivalent) education". (R. 20). Additionally, he found Jenkins' residual discomfort and reduced range of motion in his left knee was "severe"; however, the "severe" impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (R. 20). ALJ Burton also found Jenkins' testimony regarding his limitations to be less than credible and given the medical evidence in the record, ultimately found: Jenkins could lift and/or carry twenty pounds occasionally from thigh to shoulder but none from the floor; lift and/or carry ten pounds frequently from thigh to shoulder but none from the floor; stand and/or walk at least two hours in an eight hour day; sit six out of eight hours; alternate sitting and standing every thirty minutes; refrain from climbing ladders, ropes or scaffolds; rarely climb ramps and stairs; occasionally balance and stoop; and never, kneel, crouch, crawl,

-5-

work in extreme cold or around wetness, vibration or hazards. (R. 20).   ALJ Burton determined that even though Jenkins could not perform a full range of sedentary work, there were a significant number of jobs in the national economy which he could perform. (R. 21).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).

-6-

The resolution of conflicting evidence and credibility choices is
for the Commissioner and the ALJ, rather than the court.  Allen v.
Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v.
Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have
authority, however, to set aside factual findings which are not
supported by substantial evidence and to correct errors of law.
Dellolio, 705 F.2d at 125.  But, to make a finding that substantial
evidence does not exist, a court must conclude there is a
"conspicuous absence of credible choices" or "no contrary medical
evidence."   Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988);
Dellolio, 705 F.2d at 125.

ISSUES

Jenkins raised the following issues for appellate review:

1.   The ALJ failed to consider and give persuasive
     weight to the consistent and uncontroverted
     testimony of two independent vocational
     rehabilitation experts, testifying on three
     occasions in this case, that Jenkins could not
     successfully perform work existing in significant
     numbers in the national economy due to the frequent
     breaks Jenkins would be required to take;

2.   The ALJ erroneously failed to consider and give
     persuasive weight to the uncontroverted testimony
     of Jenkins that he experienced debilitating pain;

3.   The ALJ erroneously reached a determination that he
     should be "suspicious" of claimant's credibility
     because Jenkins earned $12,378 in 1998.

Testimony of the Vocational Experts

Jenkins contends that ALJ Burton failed to consider and give
persuasive weight to the testimony of the Vocational Experts who,

-7-

in response to counsel's hypothetical, opined that a person who needed frequent breaks would not be able to find work in significant numbers in the national economy. Jenkins claims that ALJ Burton mischaracterized counsel's hypothetical as asking VE Lafosse "to consider the hypothetical person to need breaks every 30 minutes for 30 - 60 minutes." (Doc. Item 7, p. 5; R. 17). Jenkins contends that his hypothetical was more limited in that his question considered a person who would have to take breaks every thirty minutes for an indeterminate amount of time. However, Jenkins, in furtherance of his argument, states that "indeterminate duration" meant thirty minutes or more. (Doc. Item 7, p. 7; R. 266-267).

An ALJ may reject the opinion of a vocational expert where the hypothetical assumptions posed to the vocational expert are not supported by the evidence. Owens v. Heckler, 770 F.2d 1276, 1282. See also, Cain v. Barnhart, 193 Fed.Appx. 357, 362 (5th Cir. 2006) ("[T]he ALJ need not rely on vocational expert testimony in response to a hypothetical containing assumptions the ALJ ultimately rejects as unsupported by the evidence."), citing Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988). See also, Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994), citing Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)("Unless there is record evidence to adequately support [assumptions made by a vocational expert], the opinion expressed by the vocational expert is

meaningless.").

While ALJ Burton agreed that Jenkins would need a break about every thirty minutes, (R. 17), he did not find support for the assumption that the duration of the breaks was indeterminate. He found Jenkins could sit for six hours elevating the leg and alternating between sitting and standing every thirty minutes to relieve pain or discomfort. (R. 218, 285-286). This is supported by medical evidence from Jenkins' treating physicians as well as the examining physicians.

In January of 1998, Dr. Waldman noted that he believed Jenkins could work a desk job. (R. 222). This opinion did not change over the course of several years. Even in July of 2000, Dr. Waldman stated that though Jenkins could not sit with his knee bent under a desk and would need to rest it often during the course of the day to alleviate pain, he could sit for prolonged periods of time. (R. 221-220)[1]. Additionally, the March 12, 2003 medical record from Dr. Drury[2] advised that there was no recommended change in Jenkins' work restrictions and "Jenkins would best tolerate activities that [were] intermittent sitting and standing activities." (R. 251). This position was echoed by an examining physician, Dr. David

---

[1]  The medical records provided by Dr. Waldman were placed in the record in reverse chronological order; therefore, citations for this part of the record are in reverse order.

[2]  Though the March 12, 2003 medical record does not contain the name of Dr. Drury, counsel for Jenkins acknowledged in his letter dated October 14, 2003 (R. 134) that this medical record was Dr. Drury's.

-9-

Steiner, who found Jenkins' should alternate sitting and standing to relieve pain. (R. 249).

In light of the foregoing, substantial evidence supports ALJ Burton's determination that Jenkins did not require breaks of an indeterminate duration. Accordingly, there was no need to adopt the hypothetical posed by Jenkins' counsel.

Credibility

Jenkins also argues that ALJ Burton erroneously found his testimony regarding his alleged debilitating pain lacked credibility and that ALJ Burton further erred by failing to provide a factual basis for that determination. "Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence." Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a

-10-

claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. <u>Falco v. Shalala</u>, 27 F.3d 162, 163-64 (5th Cir. 1994).

Jenkins' asserts ALJ Burton's determination lacks factual support and is based solely upon the fact Jenkins had not seen Dr. Waldman since May of 2002. ALJ Burton stated in his decision that he was required to consider Jenkins' subjective complaints and he did so. Specifically, he noted Jenkins' complaint of constant pain. (R. 16, 17). However, he questioned the sincerity of the statement by noting Jenkins took Naprosyn, a non-steroidal anti-inflammatory agent with analgesic qualities, and/or aspirin for pain on an as needed basis. (R. 16, 17). Additionally, he noted that Jenkins testified the Naprosyn prescription came from Dr. Waldman, but medical records showed Jenkins had not seen Dr. Waldman since May of 2002. (R.17).

ALJ Burton did discredit Jenkins' statements regarding pain because he had not seen Dr. Waldman since 2002. However, this is not of the concern to which Jenkins makes it out to be. Jenkins contends that when Dr. Waldman moved away in 2002 he began treatment with Dr. Drury. (R. 302-303). However, the record contains only one medical record from Dr. Drury. During the September 25, 2003 hearing ALJ Pickett asked Jenkins whether he had seen Dr. Drury since March 12, 2003. Because Jenkins was unable to recall his last appointment with Dr. Drury, ALJ Pickett left the

-11-

record open for Jenkins to submit additional medical records from Dr. Drury. However, counsel for Jenkins advised in a letter dated October 14, 2003 that no such medical records existed. (R. 134). Upon remand of the matter for the second time, ALJ Burton issued a letter to Jenkins' counsel advising that he was to supplement the record with any additional evidence. (R. 141). However, Jenkins failed to provide any additional medical records indicating he saw Dr. Drury or any other treating physician since March 2003. Accordingly, ALJ Burton's reliance upon the fact that Dr. Waldman was the physician from whom Jenkins obtained prescriptions and treatment is not unsupported. Further, his statement that Jenkins did not receive medical attention at the time the determination was made is supported by the evidence in the record.

The ALJ in this case made the mandatory indication of the basis for his credibility choices concerning Jenkins' complaints and because his choices are not unreasonable, his finding that Jenkins testimony regarding chronic pain lacked credibility is proper.

Earnings

Given the fact substantial evidence supports the findings of the Commissioner, the issue regarding his 1998 earnings and an alleged onset date is moot. Accordingly, there is no need to address this issue.

-12-

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Jenkins' appeal be DENIED and that the final decision of the Commissioner be AFFIRMED.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ___ day of March, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

-13-